IN THE UNITED STATES COURT OF FEDERAL CLAIMS
ORIGINAL

RECEIVED IN CHAMBERS
12-12-03

FILED
DEC 2 3 2003
U.S. COURT OF FEDERAL CLAIMS

SHERWYN ZEPHIER, ADELE ZEPHIER, )
RODERICA ROUSE, LLOYD B. ONE STAR, )
EDNA LITTLE ELK, CHRISTINE MEDICINE )
HORN and LOIS L. LONG, INDIVIDUALLY )
AND ON BEHALF OF ALL OTHERS )
SIMILARLY SITUATED, )
             )
     Plaintiffs, )
             ) No. 03-768 L
  v. )
             ) Judge Diane Gilbert Sypolt
THE UNITED STATES OF AMERICA, )
             )
     Defendant. )

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

CAROLINE M. BLANCO
Trial Attorney
Department of Justice
Environmental and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0248
(202) 305-0506 (fax)



# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Exhaustion of Administrative Remedies Is a Prerequisite to Judicial Review of Plaintiffs' Bad Men Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Plaintiffs' Breach of Trust Claim Warrants Dismissal. . . . . . . . . . . . . . . . . . . . . 7

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TABLE OF AUTHORITIES

FEDERAL CASES

Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 164, 655 F.2d 1047 (1981).... 11

Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 341, n.5 (1979) ..................... 10

Begay v. United States, 219 Ct. Cl. 599 (1979) ....................................5, 7

Begay v. United States, 650 F.2d 288, 1980 WL 99697, 450 U.S. 1040 (1981) ............. 5

Begay v. United States, 865 F.2d 230 (Fed. Cir. 1989) ................................ 11

Campbell v. United States, 16 Cl. Ct. 690 (1989) .................................... 10

Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993), 512 U.S.1235 (1994) ..... 3

Church of Scientology Int'l v. Eli Lilly & Co., 848 F. Supp. 1018 (D.D.C. 1994) ........... 11

Clinkenbeard v. Central Southeast Oil Corp., 526 F.2d 649 (5th Cir. 1976) .............. 12

Duncan v. United States, 229 Ct. Cl. 120, 667 F.2d 36 (1981) ......................... 11

Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 372 F.2d 1002 (1967) ............. 11

Hebah v. United States, 428 F.2d 1334, 192 Ct. Cl. 785 (1970) ..................... 4, 5, 7

McCarthy v. Madigan, 503 U.S. 140 (1992) ..................................... 4, 5, 6, 7

Mients v. United States, 50 Fed. Cl. 665 (2001) .................................... 9, 11

Navajo Tribe of Indians v. United States, 624 F.2d 981 (1980) ........................... 9

Shearin v. United States, 992 F.2d 1195 (Fed. Cir. 1993) .............................. 11

Smithson v. United States, 847 F.2d 791 (Fed. Cir. 1988) ............................. 11

Somali Development Bank v. United States, 205 Ct. Cl. 741 (1974) .................... 11

Tsosie v. United States, 825 F.2d 393 (1987) .................................... 5, 7

United States v. Mitchell, 463 U.S. 206 (1983) .................................. 8, 9

United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003) ............... 8, 9

STATE CASES

Doe v. Evans, 814 So.2d 370 (Fla. 2002) .......................................... 11

FEDERAL STATUTES

28 U.S.C. § 1491 ................................................................. 11

Pub. L. 86-392, 74 Stat. 8 ("the 1960 Act") ...................................... 9

STATE RULES

RCFC 12(b)(1) .................................................................... 1

RCFC 12(b)(6) .................................................................. 1, 2

FEDERAL REGULATIONS

43 C.F.R. Part 4 ................................................................. 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SHERWYN ZEPHIER, ADELE ZEPHIER, RODERICA ROUSE, LLOYD B. ONE STAR, EDNA LITTLE ELK, CHRISTINE MEDICINE HORN and LOIS L. LONG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 03-768 L<br><br>Judge Diane Gilbert Sypolt |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

On August 8, 2003, the United States filed its Motion to Dismiss Plaintiffs' Complaint. In its Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("*Opening Brief*"), the United States argued that Plaintiffs' Complaint warrants dismissal under both RCFC 12(b)(1) and (6). Specifically, the United States explained that, because Plaintiffs have failed to exhaust their administrative remedies prior to seeking judicial review of their "Bad Men" claims in this Court, they have disregarded the express language contained in the Treaties upon which they base their claim. Thus, the first Count of Plaintiffs' Complaint (Treaty Claim to Damages) should be dismissed pursuant to RCFC 12(b)(1). The United States also asserted in its Motion that Count II of Plaintiffs' Complaint (Breach of Trust) should be dismissed under RCFC 12(b)(1). This is because Plaintiffs have failed to allege a money mandating statute or regulation

that can be fairly interpreted to mandate the compensation that Plaintiffs seek. Accordingly, Plaintiffs cannot use the Tucker Act as the waiver of sovereign immunity to bring their breach of trust claim against the United States.

In addition, the United States argued that Plaintiffs have failed to state a claim under RCFC 12(b)(6) for a breach of trust and, thus, Count II of Plaintiffs' Complaint should be dismissed under this theory as well. As to this point, it is likely because Plaintiffs' action - by their own admission - is one for money damages resulting from alleged child abuse and, as such, Plaintiffs have, in essence, brought a tort action, which simply cannot be recast as a breach of trust claim.

Plaintiffs make essentially two arguments in response to the United States' Motion to Dismiss. First, they assert that "there is no administrative agency with authority to resolve their [Bad Men] claims for money damages" (Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("*Opposition Brief*") at 1) and, therefore, there is no exhaustion requirement. *Opposition Brief* at 1, 6-16. Second, Plaintiffs argue that their breach of trust claim survives because the United States "exercised complete and pervasive dominion and control over Indian boarding schools pursuant to statutes and regulations." *Opposition Brief* at 2. *See also id.* at 16-25. Both of these arguments, however, are unavailing and do not save their Complaint from dismissal. As to Plaintiffs' first argument, the United States replies as follows: 1) the express language in the Treaties, themselves, upon which Plaintiffs rely in bringing their Bad Men claim requires exhaustion of administrative remedies; 2) this Court has clearly articulated that exhaustion of administrative remedies is a "prerequisite" to bringing a Bad Men claim before this Court; and 3) the accompanying Declaration of Charles R.

Babst, Jr. ("*Decl. of Babst*"), filed herewith sets forth that, in fact, the United States Department of the Interior ("DOI") has held administrative hearings on Bad Men claims and, in fact, has awarded money damages in at least one administrative case.[1/]

As to Plaintiffs' second argument, which attempts to justify the basis for survival of their breach of trust claim, the United States counters by asserting that such an "exercise [of] complete and pervasive dominion and control over Indian boarding schools" is not the end of the inquiry. Plaintiffs must demonstrate not only the existence of a trust, including the presence of a trust *corpus*, but also that the legal authority governing the alleged trust obligation contemplates compensation to Plaintiffs in the form of money damages for any breach thereof. Plaintiffs, however, cannot meet this requirement simply because no such trust exists here for which this Court has the jurisdiction to award money damages. Rather, Plaintiffs' breach of trust claim is, in essence, a tort action for consequential damages stemming from alleged child abuse. Such a tort action, however, clearly falls outside of the jurisdiction of this Court. Accordingly, for all of these reasons, Plaintiffs' Complaint should be dismissed.

## II. ARGUMENT

### A. Exhaustion of Administrative Remedies Is a Prerequisite to Judicial Review of Plaintiffs' Bad Men Claim.

Despite the express language contained in the Treaties upon which Plaintiffs rely in bringing their Bad Men claim, and the unequivocal statement by this Court that, exhaustion of all

---

[1/] The Declaration of Charles R. Babst, Jr., filed herewith is submitted in support of the United States' Motion to Dismiss. Consideration of such materials outside of the pleadings on a 12(b)(1) motion is proper. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied,* 512 U.S.1235 (1994) ("[i]n establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits' and deposition testimony").

administrative remedies is a *"prerequisite to suit required by the treaty,"* (*Hebah v. United States*, 428 F.2d 1334, 1340, 192 Ct. Cl. 785 (1970)), Plaintiffs now argue that such exhaustion is not required because there is no administrative agency with the authority to resolve Plaintiffs' Bad Men claims.

The United States, in its opening brief, set forth the relevant Treaty language that expressly articulates the first step in bringing a claim under a Treaty's Bad Men clause. *See Opening Brief* at pages 2-3. Specifically, a person seeking compensation under a Bad Men clause must first make "proof" "to the agency," which is to be "forwarded to the Commissioner of Indian Affairs at Washington City." *Id.* In response to this clear and express exhaustion language, Plaintiffs argue that it is "ambiguous and confusing in application." *Opposition Brief* at 7. Relying on *McCarthy v. Madigan*, 503 U.S. 140 (1992), Plaintiffs specifically argue that DOI "is not empowered to grant effective relief, and thus . . . dismissal for failure to exhaust administrative remedies [is precluded]." *Opposition Brief* at 9-10. While Plaintiffs acknowledge that DOI indeed has regulations found at 43 C.F.R. Part 4, which articulate procedural rules for hearings and appeals applicable to review of administrative claims brought before the agency (*see Opposition Brief* at 14, n.6), Plaintiffs contend, without having presented their claims before the agency, that there is no legal authority for DOI to grant monetary relief. *Id.* Of course nothing would preclude Plaintiffs from bringing this same argument to this Court in the event DOI reviews Plaintiffs' claims, determines that Plaintiffs are entitled to monetary relief, yet fails to pay on those claims. Despite this available remedy following administrative review of their claims, Plaintiffs contend that *McCarthy* authorizes them to dispense with the required administrative review of their Bad Men claim altogether. *Opposition Brief* at 9-11, 13-16.

- 4 -

DOI has, however, conducted several administrative reviews of Bad Men claims and, in at least one matter, awarded monetary relief for such a claim. *See Decl. of Babst* at ¶ 4 (referring to the *Tsosie v. United States* matter), filed herewith. *See also* "Exhibit A" attached thereto, which provides an example of the administrative procedures used by DOI in its review of one of the Bad Men claims (the *Goombi* matter, which was heard in 1994 - two years after the *McCarthy v. Madigan* decision was issued). Moreover, Plaintiffs do not address the clear fact that the language, itself, contained in the Bad Men clauses of the Treaties authorize the payment of monetary relief for proven claims brought under those clauses. Accordingly, Plaintiffs' attempt to avoid dismissal by making the assertion that DOI is not authorized to grant monetary relief for Bad Men claims fails.

In addition, as discussed more fully in the United States' *Opening Brief*, the cases involving Bad Men claims previously considered by this Court, resulted in a recognition that exhaustion of administrative remedies prior to bringing Bad Men claims to this Court is clearly required by the relevant Treaties. *See Opening Brief at pages 8-9*, discussing *Tsosie v. United States*, 825 F.2d 393, 395-96 (1987); *Hebah v. United States*, 428 F.2d 1334, 192 Ct. Cl. 785 (1970); and *Begay v. United States*, 219 Ct. Cl. 599 (1979)[2]. Plaintiffs contend that these cases

---

[2] Contrary to the representation made by Plaintiffs in their *Opposition Brief* (*see* pages 12-13), the United States, in its *Opening Brief*, did not cite to or rely upon this Court's unpublished decision in *Begay v. United States*, 650 F.2d 288, 1980 WL 99697 (Ct. Cl.) (1980) ("*Begay II*"), *cert. denied*, 450 U.S. 1040 (1981). Nevertheless, although not having any authoritative effect, *Begay II* is interesting because it is so closely related to the facts at issue here, and the arguments advanced by the plaintiffs' counsel in that case are very similar to those raised here by Plaintiffs' counsel in response to the United States' exhaustion of administrative remedies argument. As stated earlier, the *Begay* matter involved allegations of sexual assault or abuse committed by teachers upon students attending an Indian boarding school. In *Begay II*, the Court noted that plaintiffs' attorney disregarded several of the hearing procedures in place during the administrative review of his clients' case, including "the failure to attack the decision on the

have no bearing on the instant matter because they were all decided before *McCarthy*, and none addressed the issue of whether the BIA or the Department of the Interior had the authority to grant effective relief in the form of money damages." *Opposition Brief* at 13. In essence, Plaintiffs contend that after *McCarthy*, administrative procedures must expressly provide for monetary relief. This, however, is not what *McCarthy* holds. In that case, the issue before the Court was whether a prisoner who sought monetary relief related to medical issues must first exhaust the administrative remedies set forth in the Bureau of Prison's grievance procedures prior to seeking judicial review of his claims. The Court determined, based on a combination of three factors, that the prisoner was not required to exhaust his claim under the internal grievance procedure. *McCarthy*, 503 U.S. at 152. These three factors include the following: 1) "Congress has not *required* exhaustion of a federal prisoner's *Bivens* claim" (*id.* (emphasis in original)); 2) the Bureau of Prison's grievance procedure "imposes short, successive filing deadlines that create a high risk of forfeiture of a claim for failure to comply" (*id.*); and 3) the "administrative 'remedy' does not authorize an award of monetary damages – the only relief requested by McCarthy in this action." *Id.*

Plaintiffs' characterization of *McCarthy*, however, is skewed. The three factors identified

---

proper legal grounds, reserve his objections, [and] submit proposed findings or provide comments on the hearing officer's decision for transmission to the Secretary." *Begay II* at \*\*2. In response, and very similar to the argument advanced by Plaintiffs' counsel in this case, the *Begay* plaintiffs' attorney argued that there were no published rules for administrative review of his clients' Bad Men claims. *Id.* In rejecting this argument, the Court stated: "plaintiffs' attorney's litigation strategy at the hearing and before this court made a mockery of the explicit treaty requirements, the court ordered administrative hearing and our jurisdictional limitation." *Id.* at \*\*1. The matter concluded by the Court granting the United States' Motion to Dismiss on the ground that the *Begay* plaintiffs had failed to exhaust their administrative remedies. *See generally Begay II.*

warranting against an exhaustion requirement in *McCarthy* are not present here. First, and highly compelling, is that a clear and express exhaustion of administrative remedies requirement for Bad Men claims exists in the Treaty language, itself. *See Hebah*, 428 F.2d 1334; *Tsosie*, 825 F.2d at 395-96; and *Begay*, 219 Ct. Cl. 599. Second, Plaintiffs have never contended that DOI has an unfair or unduly burdensome administrative process such that their claims might be compromised. Finally, Plaintiffs have failed to identify a viable basis for asserting that DOI lacks authority to provide monetary relief to satisfy Bad Men claims. Moreover, in light of the fact that DOI has, in the past, awarded monetary relief in at least one Bad Men claim (*see Decl. of Babst*, ¶ 4), Plaintiffs' argument that DOI has no authority to award such relief fails. For all of these reasons, and those set forth in the United States' *Opening Brief*, Plaintiffs' Bad Men claim should be dismissed for failure to exhaust administrative remedies.

**B.** **Plaintiffs' Breach of Trust Claim Warrants Dismissal.**

In its *Opening Brief*, the United States argued that Plaintiffs have not pointed to a money mandating statute such that the Tucker Act is invoked. *See Opening Brief* at 9-14. In their *Opposition Brief*, Plaintiffs have still failed to point the Court to such a statute or regulation. Instead, they try to refocus the Court by arguing that a trust relationship exists between the United States and Indian children and that the United States committed a breach of trust when abuse was allegedly inflicted upon Indian children while attending BIA authorized Indian boarding schools. *See Opposition Brief* at 16-25. Plaintiffs then ask the Court to assume that money damages logically flow from this alleged breach. *Id.* While the United States does not deny that it undertook certain responsibilities associated with providing Indian children with an education while attending Indian boarding schools, there simply is no legal authority that

contemplates the payment of money damages as compensation for the alleged abuse that would permit this Court to review Plaintiffs' breach of trust claim under the Tucker Act. This is true even if Plaintiffs could demonstrate that the United States "inflicted injury for which a monetary award might make the claimant whole;" that "is not enough" to establish a waiver of sovereign immunity under the Tucker Act. *Mients v. United States*, 50 Fed. Cl. 665, 671-72 (2001). "[T]he claimant must establish that the law violated obligated the Government to pay him money." *Id.* at 671.

Plaintiffs attempt to get around the requirement to identify a money mandating statute or regulation entitling them to money damages by citing to *United States v. Mitchell*, 463 U.S. 206 (1983) ("*Mitchell II*"), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003). Plaintiffs argue that these cases support their contention that no such statute or regulation need be cited here as "the BIA exercised a level of dominion and control over Indian children placed in the Indian Boarding School System sufficient to establish a fiduciary relationship, the breach of which under fiduciary principles establishes a claim for money damages." *Opposition Brief* at 16. Plaintiffs, however, misunderstand what is required to invoke a waiver of sovereign immunity under the Tucker Act such that a breach of trust claim can be heard. Plaintiffs' reliance on both *Mitchell II* and *White Mountain Apache Tribe* plainly ignores that the United States' control over the trust *corpus* in each of these cases was governed by legal authority such that a violation thereof could reasonably be interpreted to authorize payment of money damages. For example, the trust *corpus* in *Mitchell II* involved timber, and the United States, as trustee, was found to have breached its duty, as defined by money mandating statutes and regulations, to manage the timber to generate money on behalf of the Indian allottees, the trust's beneficiaries.

*See Mitchell II*, 463 U.S. at 224-26. Because the United States' duty to manage the timber as such was found to exist under money mandating statutes and regulations which gave the United States "full responsibility to manage Indian resources and land for the benefit of the Indians," the Indian beneficiaries were properly entitled to money damages. *Id.*

Likewise, in *White Mountain Apache Tribe*, the Supreme Court found that the breach of the statute establishing the United States' duty owed Indian beneficiaries could reasonably be interpreted to authorize the payment of money damages. *White Mountain Apache Tribe*, 537 U.S. 465 (2003). Specifically, in that case, the governing statute, Pub. L. 86-392, 74 Stat. 8 ("the 1960 Act"), created the United States' duty to hold in trust the land and improvements of the former Fort Apache Military Reservation. *Id.* The Supreme Court found that the United States breached its duty owed to the Tribe to preserve the trust *corpus* such that the Tribe was entitled to money damages as compensation. *Id.*[3]

Plaintiffs also cite to *Navajo Tribe of Indians v. United States*, 624 F.2d 981, 987 (1980), in support of their argument. *Opposition Brief* at 17. Plaintiffs particularly focus on the language in the *Navajo* case in which the court found a trust obligation "where the Federal Government takes on or has control or supervision over *tribal monies or properties* . . . ." *Navajo Tribe of Indians v. United States*, 624 F.2d at 987 (emphasis added). This language, however, likewise supports the requirement that there be a duty, established by legal authority, to protect a trust *corpus* (i.e., "tribal monies or properties") such that the breach of that duty results in money damages.

---

[3] The Supreme Court, however, took no position on the measure of damages owed the Tribe. *Id.*

Here, contrary to the cases cited by Plaintiffs, there is no legal authority establishing a duty on the part of the United States to protect a trust *corpus* such that a breach of that duty authorizes payment of money damages by Plaintiffs. Rather, because Plaintiffs characterize their case as one of child abuse, and because Plaintiffs argue that the United States had a trust obligation to protect the Indian children from harm while attending Indian boarding schools, it appears as though Plaintiffs are implying that the allegedly abused children, themselves, constitute the trust *corpus*. In an attempt to make this implausible and unpalletable argument pass legal muster, Plaintiffs cite to the Northwest Ordinance of 1787. Specifically, Plaintiffs contend that this legal authority extends the trust relationship between the federal government and the Indian people to the Indian peoples' "*person* as opposed to their *property*." *Opposition Brief* at 18 (emphasis added). This interpretation of the Northwest Ordinance, however, has no basis whatsoever; rather, the Supreme Court has said that the Northwest Ordinance was a document adopted by Congress "for governance of the territories west of the Appalachians." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 341, n.5 (1979). To twist an authority designed to address the governance of certain territories into a legal basis for recovery of money damages by Indian children for alleged abuse, is completely unfounded. Such a distorted interpretation of Indian trust law simply cannot be sustained.

Plaintiffs have plainly not presented a viable cause of action for a breach of trust under the Tucker Act. Rather, as even Plaintiffs admit (*see Opposition Brief* at 15), this action is, in fact, properly characterized as an action alleging child abuse for which money damages are sought. A case alleging abusive treatment, however, has been found to sound "essentially in tort" and, thus, falls outside of the jurisdiction of this Court. *See Campbell v. United States*, 16 Cl. Ct.

690, 694 (1989), citing *Aetna Casualty & Surety Co. v. United States*, 228 Ct. Cl. 146, 164, 655 F.2d 1047, 1059 (1981); *Somali Development Bank v. United States*, 205 Ct. Cl. 741, 748-49, 508 F.2d 817, 821 (1974); and *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988). "The Court of Federal Claims has no power to adjudicate torts, . . . whether brought under the FTCA or otherwise. The Tucker Act specifically excludes tort claims from the jurisdiction of the court, 28 U.S.C. § 1491 (a)(1), and the FTCA vests exclusive jurisdiction over tort actions in the district courts, *id.* § 1346(b)." *Mients v. United States*, 50 Fed. Cl. 665, 672 (2001), citing *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993); and *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 614, 372 F.2d 1002, 1013 (1967). In fact, nearly all of the cases cited by Plaintiffs in their *Opposition Brief* support the apparent reality that their breach of trust claim is actually a tort claim. *See Opposition Brief* at 22, citing Am. Jur.2d, Fraud and Deceit § 32 (2003); and the references to section 874 of the Restatement (Second) of Torts in *Doe v. Evans*, 814 So.2d 370 (Fla. 2002), and *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1027-28 (D.D.C. 1994).[4/]

Even if a money mandating breach of trust claim could, somehow, be established, the types of damages sought by Plaintiffs, "consequent psychological and emotional damages," (*Opposition Brief* at 23) are "not of the type available under traditional trust doctrines." *Begay v. United States*, 865 F.2d 230, 232 (Fed. Cir. 1989), citing *Duncan v. United States*, 229 Ct. Cl.

---

[4/] The only other legal authority cited by Plaintiffs in their *Opposition Brief* concerning the elements of a trust relationship is *Clinkenbeard v. Central Southeast Oil Corp.*, 526 F.2d 649, 653 (5th Cir. 1976). That case, however, concerns the definition of a fiduciary relationship as understood within the context of Texas agency law. Certainly, this definition is unrelated to the issue here, which is whether this Court has jurisdiction over a claim for money damages arising out of alleged torts that occurred in Indian boarding schools.

120, 667 F.2d 36 (1981), *cert. denied*, 463 U.S. 1228 (1983). Accordingly, Plaintiffs have failed to state a cause of action for a money mandating breach of trust and, thus, dismissal of this claim is warranted.

### III. CONCLUSION

Based on the foregoing and for all of the reasons set forth in its *Opening Brief*, the United States respectfully requests that its Motion to Dismiss be granted and that Plaintiffs' claims be dismissed.

Respectfully submitted,

Dated this 11th day of December, 2003.

*Caroline M. Blanco*
CAROLINE M. BLANCO
Trial Attorney
Department of Justice
Environmental and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0248
(202) 305-0506 (fax)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SHERWYN ZEPHIER, ADELE ZEPHIER, )
RODERICA ROUSE, LLOYD B. ONE STAR, )
EDNA LITTLE ELK, CHRISTINE MEDICINE )
HORN and LOIS L. LONG, INDIVIDUALLY )
AND ON BEHALF OF ALL OTHERS )
SIMILARLY SITUATED, )
                                                     )
           Plaintiffs, )
                                                     ) No. 03-768 L
v. )
                                                     ) Judge Diane Gilbert Sypolt
THE UNITED STATES OF AMERICA, )
                                                     )
           Defendant. )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2003, a true and correct copy of the foregoing **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** was served, via first-class mail, postage prepaid, to the following counsel of record at the following address:

    JEFFREY M. HERMAN, Esq.
    STUART S. MERMELSTEIN, Esq.
    HERMAN & MERMELSTEIN, P.A.
    3230 Stirling Road, Suite One
    Hollywood, FL 33021

                                                                                  _/s/ Caroline M. Blanco_
                                                                                  CAROLINE M. BLANCO